GENOVA & MALIN LLP
Attorneys for the Debtor
Hampton Business Center
1136 Route 9
Wappingers Falls, New York  12590
(845) 298-1600
Andrea B. Malin, Esq. (AM4424)
Michelle L. Trier, Esq. (MT1212)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION
----------------------------------------------------------X
In re:
                                                      CHAPTER 11

THE MASTER'S COACH, LTD.,                 CASE NO. 20-35614 (CGM)

                           Debtor.
----------------------------------------------------------X

## DEBTOR'S PLAN OF REORGANIZATION

       THE MASTER'S COACH, LTD., the above-named debtor (the "debtor") proposes the following Plan of Reorganization pursuant to the provisions of subchapter V of Chapter 11 of the Bankruptcy Code, 11 U.S.C. §101, et seq. (the "Code"):

### ARTICLE I
### DEFINITIONS

       Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

       1.    "Administrative Claim" shall mean a claim for any cost or expense of administration with priority under section 503(b) or 507(a)(1) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code, including Professional Fee Claims; and (c) all fees and charges assessed against the Estate under 28 U.S.C. sections 1911 through 1930.

       2.    "Allowed Claim" shall mean a Claim or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the Consummation Date or the expiration of such other applicable period of limitation as may be fixed

by the Bankruptcy Code, the Bankruptcy Rules, the Court, or the Plan, (b) as to which any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, (c) that has been allowed by a Final Order, (d) as to which the liability of the Debtor and the amount thereof are determined by final order of a court of competent jurisdiction other than the Court, or (e) that is expressly allowed in a liquidated amount in the Plan, *provided however,* that with respect to an Administrative Claim, that nothing herein shall be deemed to require holders of Administrative Claims incurred by the Debtor in the ordinary course of business, including the actual, necessary costs and expenses of operating the business of the Debtor, to make a request for payment of such Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code.

3. "Bankruptcy Code" shall mean Title 11, United States Code (Title I of the Bankruptcy Reform Act of 1978, Publ. 95-598, 92 Stat. 2549, as amended).

4. "Bankruptcy Court" or "Court" shall mean the United States Bankruptcy Court for the Southern District of New York or such other court, as may have jurisdiction over the Chapter 11 case.

5. "Bankruptcy Rules" shall mean, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Court, as applicable to this Chapter 11 case or proceedings therein, as the case may be.

6. "Bar Date(s)" shall mean the date(s), if any, designated by the Court as the last dates for filing proofs of Claims against the Debtor. Said date was fixed as August 7, 2020.

7. "Business Day" shall mean any day other than a Saturday, Sunday, or legal holiday as defined in Rule 9006(a) of the Federal Rules of Bankruptcy Procedure.

8. " Claim" shall mean a claim against the Debtor as defined in Section 101(5) of the Bankruptcy Code, to wit: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

9. "Class" shall mean a category of holders of claims as set forth in Article II of this Plan.

10. "Confirmation Date" shall mean the date of entry of an Order by the Court confirming this Plan.

11. "Confirmation Order" shall mean the Order of the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

12. "Creditor" means any holder of a Claim.

13. "Debtor" shall mean THE MASTER'S COACH, LTD., as debtor-in-possession, prior to the Confirmation Date.

14. "Disputed Claim" shall mean (a) any claim or portion of a claim (other than an Allowed Claim), which has been filed pursuant to Section 501(a) of the Bankruptcy Code as unliquidated or contingent, or (b) a claim which has been filed pursuant to Section 501(a) of the Bankruptcy Code as to which an objection to the allowance thereof has been interposed within the time limitation fixed by the Bankruptcy Code, by an order of the Court, or by this Plan, which objection has not been determined in whole or in part, by a Final Order.

15. "Distribution" means the property, including payments, required by the Plan to be provided to holders of Allowed Claims.

16. "Effective Date" means the fifteenth (15th) day following the Confirmation Date.

17. "Impaired" shall mean, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

18. " Insiders" shall have the meaning provided by Section 101(31) of the Bankruptcy Code.

19. "Lien" shall have the meaning provided by Section 101(37) of the Bankruptcy Code.

20. "Petition Date" means June 5, 2020, the date on which the Debtor filed its petition for relief commencing the Chapter 11 case.

21. "Plan" means this Plan of Reorganization dated September 4, 2020 and any exhibits thereto and any documents delivered in connection therewith, as the same may, from time to time, be amended by any duly authorized amendment or modification to the extent permitted therein or by the Bankruptcy Code or Federal Rules of Bankruptcy Procedure.

22. "Priority Claim" shall mean a Claim which qualifies as such under Section 507(a)(3),(4) and (6) of the Bankruptcy Code.

23. "Priority Tax Claim" shall mean a Claim which qualifies as such under Section 507(a)(8) of the Bankruptcy Code.

24. "Schedules" shall mean the schedules of assets and liabilities and the statements of financial affairs, if any, filed in the Bankruptcy Court by the Debtor as such schedules or statements may be amended or supplemented from time to time in accordance with Fed. R. Bankr. P. 1009 or orders of the Bankruptcy Court.

25. "Secured Claim" shall mean (a) a Claim that is secured by a lien on property in which the Estate has an interest, in which lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) a Claim Allowed under this Plan as a Secured Claim.

26. "Unimpaired" shall mean not impaired within the meaning of section 1124 of the Bankruptcy Code.

27. "Unsecured Claim" shall mean any Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim or an Interest.

28. "U.S. Trustee" shall mean the Office of the United States Trustee for Region 2, Southern District of New York.

## ARTICLE II
## BACKGROUND OF THE DEBTOR

The Master's Coach, Ltd. was formed over 35 years ago and operates as a provider of ambulatory services for the elderly, disabled and handicapped. The Master's Coach, Ltd. is located in Wallkill, New York and provides services to Orange, Ulster and Dutchess Counties. The Master's Coach (and its employees) has a reputation for providing consistent, courteous and professional services. As a result of a number of factors, including the debtor's principal suffering from health issues and, most recently Covid-19, The Master's Coach, Ltd.'s cash flow has been greatly impacted. This subchapter V case under Chapter 11 of the Bankruptcy Code was filed to provide The Master's Coach, Ltd. with an opportunity to restructure its high interest, short-term loans and payroll tax obligations with the Internal Revenue Service.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

All claims and interests against the debtor shall be divided into the following classes:

**CLASS 1 – Administrative Claims**

All Allowed Claims consisting of the actual and necessary costs and expenses of administration entitled to priority in accordance with 11 U.S.C. §507(a)(1), including, but not necessarily limited to, debtor's counsel fees and fees of the Subchapter V Trustee, once approved by order of the Court pursuant to 11 U.S.C. §330.

**CLASS 2 –** Class 2 consists of the Allowed Secured Claim of Walden Savings Bank ("WSB"), with respect to the notes and security agreements on the debtor's assets, perfected by a UCC-1 filing, originally filed on February 7, 2005, with continuations filed through December 17,

2019.

**CLASS 3** – Class 3 consists of the Secured Claim of the Internal Revenue Service.

**CLASS 4** – Class 4 consists of the holders of Allowed Secured Claims pursuant to purchase money security interests in vehicles owned by the debtor.

**CLASS 5** – The Allowed Unsecured Claims of non-insider unsecured claimants of the debtor not entitled to priority pursuant to 11 U.S.C. §507, to the extent not included in another class of claims, including without limitation any claims arising as a result of the operation of 11 U.S.C. §506.

**CLASS 6** – The interest of the principals of the debtor, David & Nancy Barnhart.

## ARTICLE IV
## A. TREATMENT OF CLAIMS AND INTERESTS – NOT IMPAIRED (NON-VOTING)

**CLASS 1** – Class 1 claims shall be paid in full or in accordance with an agreement between the debtor and the claimant. At the present time, it is estimated that administrative expenses with consist of the following: (1) approximately **$20,000.00** in attorneys' fees, expenses and disbursements to the firm of GENOVA & MALIN, less the pre-petition retainer fee and costs paid by the debtor in the sum of $16,717.00; (2) approximately **$5,000.00** in fees owed to the Sub-Chapter V Trustee, Eric Huebscher; and (3) U.S. Trustee quarterly fees, if any, shall be paid on the effective date of the Plan and shall continue to be paid post-confirmation, pursuant to 28 U.S.C. §1930, until such time as the Court enters a final decree closing the case. Total unpaid administrative debt is estimated at $7,000.00.

**CLASS 3** – The Secured Claim of the Internal Revenue Service (the "IRS") shall be paid by the debtor in full over a five (5) year period from the Petition Date, in accordance with 11 U.S.C. §1129(a)(9)(C). The secured portion of the IRS's claim is $185,860.28. The debtor shall pay to the IRS monthly payments, including two percent (2%) interest per annum, beginning on the Effective Date of the Plan, and continuing for approximately 54 months, in the sum of $3,602.00.

**CLASS 4** – The holders of the Allowed Secured Claims stemming from purchase money security interests in vehicles owned by the debtor. The debtor is a party to 4 vehicle loans with United Leasing, Inc. The claims of United Leasing, Inc. shall be paid in accordance with the pre-petition agreements between the debtor and United Leasing, Inc.

**CLASS 6** – Class 6 consists of the interests of the principals of the debtor, David and Nancy Barnhart. The holders of the Class 6 interests shall retain their interests.

### B. TREATMENT OF CLAIMS AND INTERESTS – IMPAIRED (VOTING)

**CLASS 2** – Class 2 consists of the Secured Claim of Walden Savings Bank, evidenced by notes and security agreements, totaling the original principal amount of $45,000.00 and secured by substantially all the debtor's assets. The Secured Claim of Walden Savings Bank shall be amortized at two percent (2%) interest over seven (7) years. This results in monthly payments by the debtor to Walden Savings Bank in the amount of $574.53. The first payment on the Class 2 claim shall be made on the first day of the calendar month immediately following the Effective Date.

**CLASS 5** – Class 5 consists of all Allowed Unsecured Claims against the debtor not entitled to priority treatment, including the general unsecured claim of the IRS. The Class 5 Claims shall be paid pro rata from the debtor's projected disposable income, on a quarterly basis (January 15, April 15, July 15 and October 15), over a period of 3 years without interest.

### C. OTHER PROVISIONS APPLICABLE TO CLASS 2, 3, & 4 CLAIMS

Prepayment; Lien Retention – The debtor may prepay all or any portion of the Allowed Class 2, 3, or 4 Claims without penalty, at any time and from time-to-time, consistent with any provisions applicable to prepayment in any applicable loan documents and/or applicable nonbankruptcy law. The Class 2, Class 3, and Class 4 claimants shall retain their lien(s) in and to their collateral. Except as specifically provided herein, the terms of the Class 2 and Class 4 claimants' loan documents shall remain unchanged.

### ARTICLE V
### EXECUTION OF PLAN & PROJECTION OF FUTURE OPERATIONS

The debtor's Chapter 11 Plan will be implemented by revenues generated and received in the ordinary course and operation of the debtor's business. The debtor's projected revenues and expenses for the 3 year post-confirmation period are annexed hereto as Exhibit "A".

### ARTICLE VI
### LIQUIDATION ANALYSIS

In the event that this Plan fails and the debtor is forced to liquidate, it is projected that Walden Savings Bank would 'foreclose' on its first lien on the debtor's assets and would likely be satisfied from the sale of said assets. United Leasing, Inc. would force a sale of the vehicles upon which it holds liens. The IRS holds secondary Federal Tax Liens in the total amount of $185,860.28. The total liquidation value of the debtor's assets, including vehicles that the debtor currently owns free and clear, would not be enough to fund creditor claims beyond Walden Savings Bank (and a portion of the Internal Revenue Service). The debtor's ambulette service would terminate and the debtor would seek dissolution from the Secretary of State.

# ARTICLE VII
# LEASES / EXECUTORY CONTRACTS

There are no leases or executory contracts for the debtor to assume or reject.


# ARTICLE VIII
# POST-CONFIRMATION MANAGEMENT

The principals of the debtor, David and Nancy Barnhart, will continue to manage the debtor's business and retain the 50% ownership interest in the debtor post-confirmation.

# ARTICLE IX
# DEFAULT

In the event of a default under the Plan that are cured by the debtor, the affected creditor(s) shall file a notice of default with the Bankruptcy Court on notice to the debtor and counsel for the debtor. The debtor shall have 7 days to object to the notice of default and request a hearing before the Bankruptcy Court. If the debtor fails to timely file an objection and a request for a hearing, then the automatic stay of 11 U.S.C. §362(a) shall immediately be vacated as to such creditor.

# ARTICLE X
# RE-VESTING OF ASSETS IN DEBTOR

The entry of the Confirmation Order shall vest all assets of the debtor's estate and the debtor in the reorganized debtor, free and clear of all Claims of creditors, except as specifically provided in the Plan.

# ARTICLE XI
# MODIFICATION OF THE PLAN

The debtor may propose amendments or modifications of this Plan at any time prior to confirmation, with leave of the Court, upon such notice as the Court shall direct. After confirmation, the debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Order of Confirmation in such manner as may be necessary to carry out the purposes and effect of this Plan.

# ARTICLE XII
# RETENTION OF JURISDICTION

Notwithstanding Confirmation or the Effective Date having occurred, the Chapter 11 Case having been closed, or a Final Decree having been entered, the Bankruptcy Court shall have jurisdiction of matters arising out of, and related to the Chapter 11 Case and the Plan under, and for the purpose of, sections 105(a), 1127, 1142 and 1144 of the Bankruptcy Code and for, among other things, the following purposes:

1. To allow, disallow, determine, liquidate, classify, estimate or establish the priority or status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

2. To grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan;

3. To resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date to the list of executory contracts and unexpired leases to be rejected;

4. To ensure that Distributions to Holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan, including ruling on any motion or objection Filed pursuant to the Plan;

5. To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor or its affiliates, directors, employees, agents or professionals that may be pending on the Effective Date;

6. To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

7. To resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Person's or Entity's obligations incurred in connection with the Plan, including, among other things, any avoidance actions or subordination actions under sections 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code;

8. To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with

Consummation or enforcement of the Plan, except as otherwise provided herein;

9. To resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained herein and enter such orders as may be necessary or appropriate to implement such releases, injunction and other provisions;

10. To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

11. To determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan;

12. To enter an order and/or Final Decree concluding the Chapter 11 Case;

13. To consider any modification of the Plan under section 1127 of the Bankruptcy Code and/or modification of the Plan before "substantial consummation" as defined in section 1101(2) of the Bankruptcy Code;

14. To protect the property of the Estate from adverse Claims or interference inconsistent with the Plan, including to hear actions to quiet or otherwise clear title to such property based upon the terms and provisions of the Plan, or to determine the Debtor's exclusive ownership of claims and Causes of Action retained under the Plan;

15. To hear and determine matters pertaining to abandonment of property of the Estate;

16. To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

17. To interpret and enforce any orders previously entered in the Chapter 11 Case to the extent such orders are not superseded or inconsistent with the Plan;

18. To recover all Assets of the Debtor and property of the Estate, wherever located;

19. To hear and determine matters concerning state, local, and federal taxes in accordance with sections 345, 505, and 1146 of the Bankruptcy Code;

20. To hear and act on any other matter not inconsistent with the Bankruptcy Code;

21. To consider and act on the compromise and settlement of any litigation,

Claim against or Cause of Action on behalf of the Estate; and

      22.      To interpret and enforce the injunctions contained in the Confirmation Order.

## ARTICLE XIII
## DISCHARGE OF CLAIMS AND INDEBTEDNESS

Except as provided for herein, in accordance with §§1192 and 1141(d)(1)(A) of the Bankruptcy Code, upon completion of the payments called for through the third anniversary of the Plan, all indebtedness of and claims against the debtor shall be discharged in exchange for the rights acquired under this Plan.

## ARTICLE XIV
## GENERAL PROVISIONS

<u>Reserve for Disputed Claims</u>. On and after the Effective Date, the Distributions reserved for the holders of Disputed Claims shall not be distributed but shall be held by the Reorganized debtor in Disputed Claims Reserve. Except to the extent that the Court shall have estimated under section 502(c) of the Code or otherwise determined that a good and sufficient reserve for Disputed Claims is less than the full amount thereof, there will be deposited into the Disputed Claims Reserve an amount of cash which would have been distributed on account of all Disputed Claims if all Disputed Claims were allowed in the full amount claimed by the holders thereof.

At such time as a Disputed Claim becomes an Allowed Claim, the Distribution which would have been disbursed had the Disputed Claim been an Allowed Claim on the Effective Date shall be released from the Disputed Claims Reserve and delivered to the holder of such Allowed Claim within 30 days. At such time as all Disputed Claims have been finally determined, the balance of the cash not theretofore distributed shall be returned to the Reorganized Debtor.

<u>Binding Effect</u>. Confirmation of the Plan shall bind the reorganized debtor and every creditor of the debtor whether or not the claim of such creditor is impaired under the Plan and whether or not such creditor has accepted the Plan.

Cram Down.  In the event that all classes of claims and interests impaired under the Plan do not vote in favor of the Plan, the debtor requests that the Court confirm the Plan under the provisions set forth in 11 U.S.C. §1191(b), as the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired class.

Dated: Wappingers Falls, New York
September 2, 2020

          THE MASTER'S COACH, LTD.

By:   /s/ David Barnhart
      DAVID BARNHART, President

GENOVA & MALIN LLP
Attorneys for Debtor
1136 Route 9
Wappingers Falls, NY  12590
(845) 298-1600

By:   /s/ Michelle L. Trier
      MICHELLE L. TRIER, ESQ.